M. FERST, J. FERST AND JOSEPH STRAUSS, PARTNERS DOING BUSINESS UNDER THE FIRM NAME AND STYLE OF M. FERST & CO., APPELLANTS, VS. B. B. BLACK-WELL, APPELLEE.

1. An offer of a continuing guaranty, executed by the guarantor at the special request of the agent of the person to whom the guaranty is addressed, and delivered to such agent who accepts same and agrees to make advances thereon to the person for whose benefit the guaranty is executed, requires no further notice of acceptance in order to bind the guarantor.

2. No notice of particular purchases by one for whose benefit another has executed a continuing guaranty is necessary in order to bind the guarantor upon such guaranty. If any notice is necessary, it is sufficient that the guarantor be notified of the amount due under such guaranty within a reasonable time after all transactions with the principal debtor, based upon the guaranty, have been closed; and even then, if no injury results to the guarantor from the failure to give notice, the omission will not bar recovery.

3. If A, for the purpose of strengthening the credit of B, agrees with C to become responsible for goods to be sold in the future by him to B, and C accepts the agreement and acts upon it by selling goods to B, the agreement of A is founded upon a valid consideration.

Appeal from the Circuit Court for Suwanee county.

STATEMENT.

Appellants on March 22, 1888, began an action of assumpsit against appellee in the Circuit Couht of Suwannee county, the first count of the declaration filed March 30, 1888, alleging in substance that on April 16, 1887, in consideration that plaintiffs, at the special instance and request of defendant, would sell and deliver to one E. J. McDaniel on credit all bills of goods that might be ordered or purchased by said McDaniel, not to exceed $1,000 at any one time, the defendant undertook, and then and there faithfully promised in writing, to pay plaintiffs all bills of goods ordered or purchased by E. J. McDaniel not to exceed $1,000 at any one time until such guaranty was withdrawn by notice to plaintiffs in person or in writing; that confiding in such promise plaintiffs did on April 18, 1887, and on divers days and times from that date until and including November 12, 1888, sell and deliver to said McDaniel all goods ordered and purchased by him, not exceeding the sum of $1,000 at any one time, on certain credit agreed upon between plaintiffs and McDaniel, for reasonable sums of money, amounting to $602.11; and that although the credit and time of payment for the price of said goods by McDaniel had long since elapsed, yet McDaniel, though often requested, had not paid said sum or any part thereof, of all which promises the said defendant on the —— day of March, 1888, had notice; that defendant, disregarding his obligation, had not paid said sum of $602.11, although requested so to do on the date last mentioned, to plaintiffs damage of $1,000.

The second and third counts were the common counts for goods sold, and accounts stated.

On May 7, 1888, defendant filed pleas: 1. "That said guaranty upon which plaintiffs sue was signed and executed by this defendant without any consideration whatever." 2. "That he "(the defendant)" had no notice of advances made or goods sold by plaintiffs upon said guaranty and of the acceptance thereof." Issues were joined upon the pleas, and at the Fall term, 1888, of the Circuit Court a trial by jury was had resulting in verdict for defendant. A motion for new trial upon the ground that the verdict was contrary to the evidence, the law and the charge of the court, was overruled, and judgment entered for defendant upon the verdict, from which this appeal was taken at the same term, in open court.

The paper writing referred to in the declaration and pleas is in the following language.

"Live Oak, Fla., April 16th, 1887.

I hereby agree and promise to pay to M. Ferst & Co., of Savannah, Ga., all bills of goods that may be ordered or purchased by E. J. McDaniel, not to exceed one thousand dollars at any one time, until this guaranty is withdrawn by notice to them in writing or in person. I mean by this that Mr. E. J. McDaniel is not to owe M. Ferst & Co., for over the amount above named at any one time, and bind me therefor.

B. B. BLACKWELL.

Witness: Ben J. Apple."

*J. S. White*, for Appellants.

*B. B. Blackwell*, for Appellee.

CARTER, J.:

The only error assigned is based upon the ruling of the Circuit Court denying plaintiffs' motion for a new trial. This requires us to determine whether the evidence was legally sufficient to sustain the verdict. The issues tried in the court below were evidently framed upon the theory that the paper sued upon was, upon its face, an offer of a continuing guaranty for the debts of McDaniel, requiring notice of its acceptance and notice of advances made or goods sold under it, in order to bind the defendant. It is here insisted by appellants that this paper was of such a character that no such notices were required. If this be true, issue should not have been joined upon the second plea, but its sufficiency should have been tested by demurrer, or in some other appropriate manner. Hood vs. French, 37 Fla. 117, 19 South. Rep. 165; Clyde S. S. Co. vs. Burrows, 36 Fla. 121, 18 South. Rep. 349. We shall, therefore, treat the paper as an offer of a continuing guaranty, requiring notice of acceptance and notice of advances made or goods sold under it, in accordance with the issues tried by the court below.

I. Two questions were presented for the consideration of the jury by this second plea: First, did defendant have notice of plaintiffs' acceptance of the offer of guaranty? Second, did defendant have notice of advances made or goods sold by plaintiffs in reliance upon such guaranty? There was no evidence whatever to justify a negative answer to these questions, such as the jury necessarily gave by their verdict. *First*: Plaintiffs' agent testified that on April 16, 1887, he sold McDaniel a bill of goods for cash,

amounting to about $800; that McDaniel referred him to defendant for the money; that defendant paid him a portion of the money that day, and promised to send balance in a few days; that defendant then told him he expected to buy his groceries from McDaniel; that he felt an interest in McDaniel and wanted to help him along; that witness might ship McDaniel at any time as much as $1,000 worth of groceries, and "I will be responsible for them; I will see them paid for," that witness told defendant "that is all right with me, and we will do so, but the firm would be better satisfied if you would put that in writing," to which defendant replied "all right, I'll do it;" and thereupon turned to his desk and wrote and handed witness the paper sued upon, whereupon witness, having full power to act for plaintiffs, took the paper, saying "that is all right, the groceries will be shipped on this." This evidence was uncontradicted, and the defendant admitted writing the paper and handing same to this witness, and that the witness took the paper. Under these circumstances there was not only an acceptance of the paper, but express notice to defendant of its acceptance; and as, from that moment, the paper became a complete contract, no further notice of its acceptance was necessary. Wildes vs. Savage, 1 Story, 22; The New Haven County Bank vs. Mitchell, 15 Conn. 206; Bushnell vs. Church, 15 Conn. 406; Neagle vs. Sprague, 63 Ill. App. 25; Davis vs. Wells, 104 U. S. 159; Davis Sewing Machine Co. vs. Richards, 115 U. S. 524, 6 Supt. Ct. Rep. 173. It is true the defendant testified that at the time he gave plaintiffs' agent the paper, they both thought there would be no necessity to use the guaranty, as it was decided between them that the $800 then ad-

vanced by defendant for McDaniel "would be enough to run him," but it was not pretended that there was any condition attached to defendant's guaranty, based upon McDaniel's actual need for more goods; nor is it denied that plaintiffs' agent accepted the paper and agreed to ship the goods upon it in case McDaniel did need them.

*Second:* The defendant testified, without contradiction, that in the latter part of December, 1887, at the time of McDaniel's failure, plaintiffs' agent told him that plaintiffs held his guaranty for what McDaniel was owing them, and he asked the agent to send him a copy of the account and of the written guaranty. He does not deny receiving these papers as requested by him. His agreement with plaintiffs was still in force on that date, never having been revoked either in person or in writing. This was notice to defendant that plaintiffs had made advances or sold goods to McDaniel upon the guaranty. The defendant did not claim, either in his plea or testimony, that any injury resulted to him from a failure to give earlier notice. Treating the paper as a continuing guaranty, no duty devolved upon the plaintiffs to notify defendant of particular purchases under it; nor in the absence of a stipulation to that effect in the agreement, to render statements of McDaniel's account to defendant. Their whole duty would be performed by notifying defendant of the amount due, within a reasonable time after all transactions with McDaniel based upon the guaranty were closed, and even then if no injury resulted to defendant from a failure to give such notice, the omission would not bar recovery. Cremer vs. Higginson, 1 Mason, 323; Wildes vs. Savage, 1 Story, 22; Douglass vs. Reynolds, 7 Pet. 113, text 126; Davis vs.

Wells, 104 U. S. 159; Babcock vs. Bryant, 12 Pick. 133; Clark vs. Remington, 11 Met. 361; Craft vs. Isham, 13 Conn. 28; Howe vs. Nickels, 22 Me. 175; Montgomery vs. Kellogg, 43, Miss. 486, S. C. 5 Am. Rep. 508; Taussig vs. Reid, 145 Ill. 488, 32 N. E. Rep. 918; 1 Brandt on Suretyship & Guaranty, sec. 192.

II. The evidence disclosed a valid consideration for the agreement. True, the defendant testified that he "never received a cent" from plaintiffs or McDaniel for entering into the guaranty. We said in Robinson vs. Hyer Bros., 35 Fla. 544, 17 South. Rep. 745, that "a consideration emanating from some injury or inconvenience to the one party, or from some benefit to the other, is a recognized legal consideration." If A, for the purpose of strengthening the credit of B, agrees with C to become responsible for goods to be sold in the future by C to B, and C accepts the agreement and acts upon it by selling goods to B, there is every element of a valid consideration; because C has parted with his property upon the faith of A's promise, and B, *at A's express or implied request*, has obtained a benefit by means of such promise. Applying this principle to the facts of this case, if the promise of the defendant was made before the obligation of McDaniel was incurred, and entered into the inducement for giving the credit to McDaniel, the defendant's undertaking was founded upon a valid consideration. 1 Parsons on Contracts (8th ed.), pp. *450, *451 and notes; Train vs. Gold, 5 Pick. 380; Bickford vs. Gibbs, 8 Cush. 154; Williams vs. Perkins, 21 Ark. 18; Beakes vs. Da Cunha, 126 N. Y. 293, 27 N. E. Rep. 251; Wellington vs. Apthorp, 145 Mass. 69, 13 N. E. Rep. 10.

The evidence was positive and without conflict, that

subsequent to the execution and delivery of defendant's agreement, and in reliance upon the same, the plaintiffs had at various times parted with their property by selling same to McDaniel, the person designated in the agreement, in accordance with its terms, and that the present suit was instituted to recover the purchase price of this property.

There being no evidence to sustain the verdict, the judgment of the Circuit Court is reversed and a new trial granted.